IN THE UNITED STATE DISTRICT FOR
THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED
8/9/2024
Nathan Ochsner, Clerk of Court

John  Licona  Jr.                        §
                                         §
    Plaintiff                            §
                                         §        Civil Action No:
                                         §
    v.                                   §
                                         §        **COMPLAINT**
                                         §
Professional Distribution Center, Inc.   §        DEMAND FOR JURY TRIAL
Sudaryono Summargono,                    §
Owner/President/Director                 §
                                         §
    Defendant                            §

## PLAINTIFF'S  ORIGINAL COMPLAINT

COMES NOW  Plaintiff, John Licona Jr., and files his Original Complaint
against his former employer Professional Distribution Center Inc.   Plaintiff will bring
this suit under Title VII and civil rights violations under 442 Employment, 710 fair
labor Standards Act, alleging  wrongful termination, exploitation of certain American
employees of different ethnic persuasions, retaliation against Plaintiff, and Plaintiff
being exposed daily to a hostile working environment created by the owner himself and
his management staff. Plaintiff therefore presents the following grounds in support of:

**I**

## RESIDENCE  OF  PARTIES  &  BACKGROUND

**Defendant:**

1.      Professional Distribution Center, Inc. headquarters,  is located on 10980 Stancliff
Road in Houston, Texas 77099-4206 USA.   The company has multiple locations in
Houston owned, directed by and presided over as president by Sudaryono Summargono,

1

who is of chinese ethnic persuasion, American citizen status unknown at this time.

**Plaintiff:**

2.      John Licona Jr.,  is an American 5th - 8th generation latino citizen, by birth, who resides on 711 W. Monseratte Street, in El Campo, Texas 77437  USA.   Plaintiff entered into employment with Professional Distribution Center Inc., on or about the 24th Day of February, 2023 as the lead person of organization and inventory control.

## II

## Jurisdiction

1.      This court has exclusive personal and subject matter jurisdiction.  Both parties reside and work within the jurisdiction of the Southern DisctricT Of  Texas Houston Division.    Federal Question jurisdiction arises under federal law: Title VII

## III

## TRIAL BY JURY

2.      Plaintiff  DEMANDS  trial by jury.

## IV

## DICOVERY

3.      Discovery will be conducted under Rule 26 of the Federal Rules of Civil Procedure and Joint Discovery Plan

## V

## Infractions/Allegations:

**Discrimination:**

3.      Professional Distribution Center Inc., discriminates against Plaintiff and other

2

American citizens who are employeed by not providing the same benefits to American Citizens as it does to Chinese citizens and or Chinese American citizens e.g. paid sick days off, vacation benefits and higher wages.

4.       Professional Distribution Center Inc., discriminates against American citizens of caucasian, latino and african ethic persuasion in its' hiring practices as respects administrative and management positions.   The administrative office is operated by 100 percent ethic asian with no caucasian, latino nor african American employees in its' administrative office.   Plaintiff can only speak of the location on Stancliff road.

5.       Professional Distribution Center Inc., exploits, Caucasian Americans, latino Americans and African Americans in its sales department hiring practices only to garner sales contracts from the different ethic persuasions who own remodeling companies which is the heart of its clientele.

**Note #1**:  Plaintiff was not presented any company policies at all when he was hired by Professional Distribution Center, Inc. ( Now referred to as PDCI for purposes of this suit. Plaintiff will allege that this company practices making up rules and regulations as they occur.   Plaintiff was written up twice for falling asleep on the job (medical condition from driving 100 plus miles to and from the job location every day) yet never signed any policy regarding the approved conduct of the employees it hires. The vice president of the company remarked one day after Mr. Summargono wondered why the break room of the employees was filty and dirty. The VP responded that it was due to the "culture of allowing the employees do whatever they hell they wanted to do". There is no company structure nor policy respecting the approved and unapproved conduct of its employees, management or non-management that Plaintiff is aware of nor was ever presented to sign at time of hiring. Plaintiff will write this suit in 3rd person but not speak in the 3rd during litigation to serve the jury.

6.       Plaintiff strongly asserts that, because  PDCI has no written policy nor structure to guide its' employees,  the company was fined close to 40 thousand dollar in OSHA fines in the previous year of 2023.  Discovery from OSHA will bring these allegations to light. The violations were, in part, due to fire exits being blocked by employees placing pallets of material completely in front of the fire exits preventing escape in case of fire.

3

7.      On two occasions, on or about the month of May or April of this year, Plaintiff reported OSHA violations of the same nature by United Parcel Service drivers parking in from and completely blocking the fire exits rather than parking in the proper locations to drop off its deliveries. On both instances, a non-management employee, a co-worker, reported Plaintiff to Management.

8.      The first instance, Plaintiff was called into the office for a meeting with Mr. Summargono *only*. Plaintiff was reprimanded by Mr. Summargono for reporting the OSHA violations to another employee who then reported Plaintiff to management. Plaintiff was ordered not to report the UPS drivers again. The UPS drivers as well reported Plaintiff to management for asking them to not violate the laws for the company had already been fined for the same infractions.

9.      The second instance, Plaintiff was called into the office for another reprimand meeting. This instance included the co-worker who reported Plaintiff to the immediate manger/supervisor named Mike. Last name unknown. Plaintiff never knew that last name of this manager who reported both infractions to Mr. Summargono after Plaintiff gave him some constructive criticism of his management performance…retaliation. He reported Plaintiff to Mr. Summargono on both instances in retaliation for Plaintiff reporting the OSHA violations of the UPS drivers.

10.     Plaintiff was hired to correct the inventory and organization mess created by an employee name Juan Garcia. When Plaintiff began working, from day one, Mr. Garcia was extremely verbally hostile to Plaintiff for fear Plaintiff was replacing him or "taking his job" which was never the case. This hostility went on for about a month or two until

4

the Vice President had to step in and call a quick meeting between Plaintiff and Mr. Juan Garcia.  The VP explained to Mr. Garcia that Plaintiff's job was to be in charge of inventory control and organization to "make it easier for you to pull orders" and that he did not care if you guys (Plaintiff and Mr. Garcia) don't like each other but to make certain the company came first in its operations.

11.     Plaintiff strongly asserts that, before this brief meeting with the VP named Matt, last name unknown, Mr. Garcia was caught stealing Plaintiff's un-signed time card and placing his name on it.  Further Plaintiff discovered that Mr. Juan Garcia was not showing up for work while having another co-worker (good friend) punch in for him to make it appear as if Mr. Garcia was working when in fact he was not there.  Plaintiff reported this form of embezzlement to management for Plaintiff placed the company first.  This inflamed Mr. Garcia and the hostilities continued toward Plaintiff in a somewhat subtle fashion.

Note:  Plaintiff will cite Hanes v. Kerner in that he will not be held by the court to the standards of a degreed and licensed attorney in the statements of claims  for relief or any other language of his pleadings.

12.     Plaintiff endured these hostilities from that point up until this year when he retaliated against Plaintiff for reporting the UPS  OSHA violations.

13.     Plaintiff asserts, that, after the 2nd reprimand meeting for reporting OSHA violations,  the entire management team including Mr. Summargono became even more hostile to Plaintiff by forcing Plaintiff to completely take over Mr. Juan Garcia's duties of pulling orders on top of the extra receiving duties the company placed on Plaintiff. Plaintiff was receiving the product…stocking the product…then again  pulling the product on top of his inventory and organization duties.  Mr. Summargono  then told Plaintiff if "you want to

5

keep your job you need to follow instructions of Juan Garcia". The same person whose job Plaintiff was hired to correct was not Plaintiff's immediate supervisor further inflaming hostilities.

14.    Plaintiff asserts that during the 2nd reprimand meeting, Plaintiff stated to all management that Juan Garcia was and is the root cause of the hostile working environment. However, Plaintiff' grievances were not heard and Mr. Summargono did not want to hear such things.  Plaintiff left the meeting asking Mr. Summargono for a resignation package and Mr. Summargono denied his request and sent Plaintiff home without pay for the rest of the day.  Again…this 2nd reprimand meeting took place at the end of May of this year.

15.    Plaintiff for the last two months pleaded with Mr. Summargono that the hostilities were continuing against him yet Mr. Summargono simply told Plaintiff…follow instructions or  you will be terminated.  Plaintiff was penalized by not being allowed to work any more overtime hours as well while Mr. Garcia was allowed all the over-time he desired.

16.    Plaintiff was at his wits end.  Plaintiff now hated his job and did not want to work at this company any longer but was not in a position to find other employment.

17.    Plaintiff asserts, that on July 11, 2024,  at approximately 5:23 p.m. Mr. Garcia approached him while he was preparing to leave work demanding that Plaintiff do his job and follow his orders. The building had flooded due to hurricane Beryl and Plaintiff was preparing a fan to dry up the carpet in his work area then leave.  Mr. Garcia began screaming at Plaintiff yet again.  This instance Plaintiff  had enough of the hostilities toward him by Mr. Garcia and began video recording Mr. Garcia's hostilities and secured video evidence.

18.    Plaintiff reported to Mr. Summargono that he now had video proof of Mr. Garcia's hostile attitude toward Plaintiff but Mr. Summargono did nothing about it.

19.    Plaintiff sent many text messages to Mr. Summargono explaining his grievances yet Mr. Summargono continued to ignore Plaintiff's grievances. Plaintiff was sent home twice without pay. Plaintiff was penalized for reporting the hostilities and for pointing out to Mr. Summargono that the over-all reason for the hostile working environment was because of him…the owner. Mr. Summargono did not take to kindly to an employee pointing the finger at the owner of the company as the root cause of the hostilities. Mr. Summargono did not like constructive criticism.

20.    Before this day, about 3 weeks ago from the filing of this lawsuit, Plaintiff had informed Mr. Summargono that he had enough and was preparing legal action of nothing changed. Plaintiff asserts that…nothing changed and was ignored yet again.

20.    Plaintiff asserts that on the day of July 11th, 2024 Plaintiff informed all of his co-workers and Mr. Summargono that he will now be under body-cam surveillance to stop the hostilities and lies about him by fellow employee Juan Garcia.

21.    Plaintiff asserts that the following week of July 15 through July 16th Plaintiff said not one word to Mr. Garcia and that Mr. Garcia knew his actions, words etc. were being recorded when he came in the vicinity of Plaintiff.

22.    On the 16th day of July, 2024 at approximately 4:40 p.m. Mr. Garcia again approached Plaintiff again demanding that Plaintiff do his job for him and pull an order for delivery. Plaintiff said nothing to Mr. Garcia as Plaintiff was cleaning his work area and preparing to go home for the day. Plaintiff asserts that Mr. Garcia then made a phone call

to management assuming it was Mr. Summargono.   Again, Mr. Garcia was telling lies about Plaintiff to the recipient of this phone call even though Mr. Garcia knew very well he was being video and audio recorded.

23.     Plaintiff asserts that the following day, July17th 2024,  he was working on shipping and delivery mistakes by Mr. Garcia with the front office inventory entry and receiving entry clerk admin named only as Seline.  Plaintiff was trying to correct the mistakes of Mr. Garcia for Mr. Garcia never learned how to do his job correctly and never accepted responsibility for his mistakes.  While Plaintiff was working to correct the mistakes of  Mr. Garcia,  Mr. Summargono told Plaintiff to do the job of Mr. Garcia if he did not want to be terminated.

24.     Plaintiff explained the entire reason for organizing the warehouse was so that Mr. Garcia could do his job easily and pull orders easily.   Plaintiff established a system of locations for all the products to be found with ease. However,  the company refused to implement the new procedures for pulling orders.  Plantiff explained to Mr. Summargono that he, Plaintiff had spent an entire year creating a process by which the order puller could easily pull their orders.  Mr. Summargono state that he did not care about the new procedures and told Plaintiff that if he did not do Mr. Garcia's job…"you will be terminated".

25.     Plaintiff asserts that this was the last straw.  Plaintiff proceeded to do Mr. Garcia's job but sent Mr. Summargono multiple texts outlining every single infraction of rights violations the company was engaging in, including the rights of Plaintiff.

26.     Plaintiff gave Mr. Summargono 3 scenarios or 3 options to clear up hostilities

8

toward Plaintiff once and for all plus all the OSHA retaliation violations, discrimination of company benefits violations etc.   One option was for Plaintiff to resign immediately with a severance package of one full year pay.

27.     The second option was that if Plaintiff was going to be forced to assume Mr. Garcia's position of order puller...that Plaintiff asked for a 2 dollar hourly increase in hourly salary and a return to 10 hour days (overtime) to ensure the complete proper daily oversight of the order pulling and shipping.  Plaintiff exclaimed that he would completely take on Mr. Garcia's duties as respect order pulling and shipping.  Plaintiff also requested vacation benefits to run retro.  The same benefit of vacation Mr. Summargono was bestowing to only asian employees (American or not) and not American by birth employees (native).

28.     The 3rd and final option was that Plaintiff would file a report to the Texas labor board, the EEOC and eventually legal action.

29.     Plaintiff asserts that roughly 30 minutes later, Mr. Summargono, his VP and another person who is a sales person approached Plaintiff.   Plaintiff asserts that Mr. Summargono explained to him that he, Plaintiff, was being terminated based on the text messages.  Mr. Summargono explained that because of the texts messages Plaintiff had just sent...Mr. Summargono stated that Plaintiff was "not fit" to work for his company any longer and that Plaintiff was immediately terminated.

30.     Plaintiff recorded the entire conversation as did Mr. Summargono.  All video footage will be filed with briefs in support of motions for summary judgments.  Defendant will have all video and audio footage presented to Defendant in initial disclosures to ensure a speedy avenue to Summary Judgment.

31.    Plaintiff asserts that this is Mr. Summargono's final act of retaliation against Plaintiff.   Because Plaintiff knew of his rights….Plaintiff was terminated. Because Plaintiff was reporting OSHA violations that PDCI only the year before was fined close to 40 thousand dollars for the same infractions Plaintiff was trying to prevent the UPS driver from doing.   Plaintiff had explained to the UPS driver that PDCI was recently fined by OSHA for the exact same infractions yet UPS, Plaintiff's co-workers, management and the Director, President and owner himself retaliated against Plaintiff for his reporting of OSHA violations.

## VI

## CLOSING STATEMENT

1.    Plaintiff asserts that, never in his entire 56 years of life or  working life has he ever had his right so egregiously and maliciously violated by a company he worked for. Plaintiff asserts that Defendant claims he, Plaintiff was not fit to work at his company? Apparently Plaintiff was fit when hired and remained fit for an entire year and a half.

2.    What changed?  Defendant discovered that Plaintiff was an employee who actually knew his rights and the importance of safety rules.  Plaintiff has been in commercial construction most of his life.   Plaintiff has worked on jobs by construction companies such has Harvey Construction and Gilbane just to mention a few.  Plaintiff has even worked for Applied Finishes which, by the way, is a client of  Defendant.  Plaintiff knows the importance of obeying safety rules.

**Why Plaintiff was hired to begin with:**

Plaintiff's overall tasks when hired, included oversight of Mr. Garcia's position/duties of pulling orders and shipping the orders.  This was Plaintiff's primary

position….inventory control…making certain the proper orders were pulled correctly for shipping.  This is why Plaintiff could not understand why he was forced to now become a sub-ordinate of the person whose  position he replaced and a position Mr. Garcia had never mastered nor improved upon.

**Wrongful Termination**:

1.     Plaintiff asserts that, the most egregious violations of Defendant are the retaliations for reporting OSHA violations,  being discriminated against by not being given the same benefits as the asian employees and finally being wrongfully terminated in retaliation.

**VII**

**<u>CAUSE OF ACTION</u>**

**Violation of Title VII of the American Civil Rights Act of 1994
Amended by The Civil Rights Act of 1991**

1.     Plaintiff, John Licona Jr., re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

2.     Defendant,  Professional Distribution Center Inc., discriminates against certain employees of certain ethic racial backgrounds in its hiring practices and in its bestowing of benefits to Asians only while excluding all other ethnic races, in violation of  Title VII of the  Civil Rights Act of 1964 (Publ. L. 88-352) and as amended in volume 42 of the United States Code, beginning at section 2000e.  Title VII prohibits discrimination based on race, color, religion, sec and national origin.  Further in violation of the Civil Rights Act of 1991 (Pub. L.102-166) (CRA) and the Lily Ledbetter Fair Pay Act of 2009,(Pub. L. 111-2) amend several sections of  Title VII.  In Addition, section 102 of the CRA (which is printed elsewhere in this publication) amends the Revised Statutes by adding a new section

11

following section 1977 (42 U.S.C. 1981), to provide for the recovery of compensatory and punitive damages in cases of intentional violations of Title VII, the Civil Rights Act of 1994 and as Amended in the Civil Rights Act of 1991.

3.      Professional Distribution Center Inc.'s violation of Title VII amount to a pattern or practice of discrimination. Its' discrimination against a person or group of persons raises an issue of general public importance.

## VIII
## Prayer

WHEREFORE ALL THINGS CONSIDERED Plaintiff petitions the court to award him declaratory, compensatory punitive, pain and suffering monetary relief in the sum of 10 million U.S. Dollars for intentional deprivation of rights including wrongful termination, retaliation resulting from a hostile working environment created and approved of by the owner and his management staff of Professional Distribution Center Inc. -Houston. Plaintiff reserves all rights to amend this Original Complaint. Plaintiff prays for relief.

Respectfully submitted,

John Licona Jr.   Pro Se Litigant
P.O. Box 535
Pierce, Texas 77467
Direct: 346-277-4747
Email: johlicona@yahoo.com

**PLAINTIFF**

12

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing instrument Original Complaint will

be forwarded via email to the following email address of Defendant so as to allow

Defendant early review.  Summons will be handled either by Federal Marshall being as

how plaintiff has attached  a forma pauperis and is proceeding Pro Se and/or may be hand

delivered by a party not of this suit to the physical address of Defendant listed below.

To the following email address:


PDCHOUSTON.COM

pdchouston@gmail.com
spec@pdshouston.com

Professional Distribution Center Inc., -Houston
10980 Stancliff Road
Houston, Texas 77099
Direct: (281) 561-9985

_____
John Licona Jr.

13